The Ordinary *v.* Executors of Smith.

---

THE ORDINARY v. THE EXECUTORS OF SMITH.

An action cannot be maintained by the next of kin, unless the Orphans' Court has decreed and settled the distribution, and in doing so, has decreed to him, a certain distributive share; nor can such next of kin assign as a breach of the administration bond, the non-payment of a distributive share, any more than he can bring his own action at law for the recovery thereof, until such distribution has been settled and decreed by the Orphans' Court.

This was an action of debt on an administration bond. The following state of the case was agreed upon, by the attorneys of the parties.

CASE ON THE PART OF THE PLAINTIFF.

The writ in this case was duly returned to February Term 1834. The declaration and plea regularly filed.

Vining Hill, late of the county of Salem, died intestate, on or about the first day of October, A. D. 1821, and administration of his estate, was granted to Joseph Wright, who, together with Edmund W. Wright and Allen Smith as his securities, on the thirteenth day of October, A. D. 1821, made and executed their joint and several administration bond in due form of law, to Isaac H. Williamson, Esquire, Ordinary, in the penal sum of three thousand dollars ; upon which said administration bond, this action is prosecuted. Joseph Wright, as administrator, &c.

The Ordinary *v.* Executors of Smith.

of Vining Hill, dec. at the Term of September, A. D. 1823, filed his final account of such administration, in the Surrogate's office of the county of Salem, and the said account was at the said term, passed and decreed upon by the Orphans' Court, whereby he charged himself with a balance remaining in his hands, of said estate, to the amount of eight hundred and sixty-four dollars and fifty-two cents, to be distributed according to law. Joseph Wright died intestate, in the year 1827, and at the term of September, A. D. 1832, the following decree was made by the Orphans' Court of said county, without notice to the defendants.

John Tuft, who married Rebecca Hill, } On Order for Dis-
one of the heirs of Vining Hill, dec. } tribution.

It is ordered by the Court, that the balance of eight hundred and sixty-four dollars and fifty-two cents, remaining in the hands of Joseph Wright, administrator of said Vining Hill, as per settlement of September term 1823, (first deducting one dollar, the costs of this order,) together with lawful interest on the same, be distributed in proportion as followeth, that is to say— one-third part thereof to Ann Hill, the widow of said deceased, and the remaining two-thirds to be equally divided between Rebecca, the wife of John Tuft, Margaret Hill, Ann Hill and John N. Hill.

No part of the said sum of money has yet been paid, either to the widow or to the heirs at law, or next of kin to the said Vining Hill, deceased, and this action is prosecuted by John Tuft, who inter-married with Rebecca Hill, one of the next of kin to the said Vining Hill, deceased, for the prosecution whereof, an order has been made by Peter D. Vroom, Esquire, Ordinary, in due form of law. John Tuft made demand of the present defendants, of the portion of the estate of the said Vining Hill, deceased, due and owing to his wife Rebecca, as one of the next of kin to the said Vining Hill, deceased, and tendered to them a refunding bond, with two sufficient securities, in due form of law, on or about the fifth day of September, A. D. 1833, before the commencement of this suit, and the only breach relied on, is the non-payment of the balance remaining in the

hands of Joseph Wright, administrator aforesaid, upon a settlement of his account as aforesaid, to the next of kin to the said Vining Hill.

### CASE ON THE PART OF DEFENDANTS.

Vining Hill, in his life time, was the guardian of the children of Henry Snitcher, deceased, and at September term 1832, Joseph Wright, as administrator of Vining Hill, the late guardian of said children, settled the account of such guardianship, by which account, it appeared there was a balance in favor of said children, of seven hundred and seventy-one dollars and eighty-eight cents.

Edmond W. Wright, one of the aforesaid securities, died on or about the first day of October, A. D. 1824, and duly appointed Daniel Garrison his executor, who settled the estate at December term 1825. Allen Smith, the other of the said securities, died on or about the first day of April, A. D. 1824, and duly appointed David S. English and Joseph Lippincott, the defendants in this suit, his executors, who settled the estate at September term, 1827.

A claim having been made in behalf of the children of Henry Snitcher, upon the estate of Vining Hill, their late guardian, and a suit commenced upon the administration bond above mentioned, against the present defendants, executors of Allen Smith, one of the sureties therein mentioned, for the recovery of the balance alleged to be due to them from their late guardian, and a suit having been also threatened to be brought upon the said administration bond, for the recovery of the said balance, against Daniel Garrison, executor of Edmond W. Wright, the other surety in the said bond; the said Daniel Garrison, as executor aforesaid, deeming the estate of Edmond W. Wright liable for the default of the said Vining Hill, as guardian of the Snitchers, paid to the children of Snitcher, the sum of four hundred and eighty-one dollars and forty-eight cents, being a part of the money alleged to be due to them from Vining Hill, late guardian as aforesaid, and upon such payment, took the following writing by way of a release:—

The Ordinary *v.* Executors of Smith.

*Received*, October 31, 1835, of Daniel Garrison, Esquire, executor of the last will and testament of Edmond W. Wright, deceased, the sum of four hundred and eighty-one dollars and forty-eight cents : The payment of which sum is to operate as a full discharge to the estate of the said E. W. Wright, for all liability for or on account of his having become one of the sureties upon the administration bond of Joseph Wright, administrator of the estate of Vining Hill, deceased, so far as the children of Henry Snitcher, deceased, are concerned in the fulfilment of the condition of said bond.

*Aa. Ogden Dayton,*
<span style="font-size:smaller">*Attorney for Henry Snitcher and others, children of Henry Snitcher, dec'd.*</span>

It is also agreed, that either party shall be at liberty to object to any part of the above case, as incompetent evidence, and that liberty is hereby reserved to either party, to turn this case into a special verdict, and bring a writ of error thereon.

If upon the foregoing facts, the court shall be of opinion that the plaintiff is by law entitled to recover, then judgment to be entered for the plaintiff, for the penalty of the bond, with costs. And if the court shall be of opinion that the plaintiff is not entitled to recover, then judgment to be entered for the defendants, with costs.

*F. L. Macculloch,* for plaintiff.

*A. L. Eaken,* for defendants.

The opinion of the court was delivered by the Chief Justice.

HORNBLOWER, C. J. Allen Smith and Edmond W. Wright, were securities for Joseph Wright, in an administration bond, given by him as administrator of Vining Hill, deceased. The bond bears date on the 13th of October 1821. In September 1823, Joseph Wright exhibited his final account in the Orphans' Court of Salem county, where the same was allowed and passed, showing a surplus in his hands, of $864 52, to be distributed among the next of kin of Hill the intestate. In 1827, Wright, the administrator died, without having paid over this surplus fund, or any part of it to the next of kin ; nor had any order or decree for distribution, ascertaining who were entitled, and allotting their respective shares, been made by the Orphans' Court. Allen Smith and Edmond W. Wright, the securities of

Joseph Wright, both died in his life time; the former in April, and the latter in October 1824; the defendants are executors of Allen Smith.

Thus matters stood until September 1832, when the Orphans' Court, at the instance of the prosecutor, John Tuft, who had married a daughter of Vining Hill the intestate, made an order or decree for distribution, directing one-third part of the said surplus money to be paid to the widow of Vining Hill, and the other two-thirds thereof to be equally divided between his children, who are severally named in the decree.   Upon whom, notice of the motion for this decree, was served, or whether any notice was given to the defendants or others, does not appear; nor does the decree direct by whom the money shall be paid, or the distribution made.   After this, Tuft in right of his wife, demanded of the defendants, her portion of the surplus money, and tendered to them a refunding bond; but the case does not inform us, to whom the bond was made payable; whether to Wright the deceased administrator, or the defendants as executors of Allen Smith.

The money not being paid, this action was brought, not for the distributive share of the prosecutor's wife; but on the administration bond, and the only breach assigned; or at least the only one relied on, is the non-payment by Wright, the administrator of Hill, to Tuft and his wife, of her distributive share of the surplus money.   There are some other matters stated in the case, but they are not material to the question submitted to the court.

Upon the foregoing facts, we are called upon to say whether this action can be maintained.   It must, I think, be admitted, that no action can be maintained on this bond against the defendants as executors of Smith, unless it could be maintained against Smith himself, if he was living : and it is equally clear, that Smith would not be liable in an action on this bond, unless his principal, Joseph Wright, the administrator, was himself liable.   The question then resolves itself into this, viz. whether the next of kin of Vining Hill the intestate, are in a situation to assign, as a breach of the administration bond, the non-payment to them by Wright, the administrator, of their distributive

The Ordinary *v.* Executors of Smith.

shares ? Or in other words, whether upon the facts stated, there was any breach of the condition of the bond, by Wright, the administrator, in his lifetime ? But the administrator could be in no default for not paying until he was bound to pay ; and, in my opinion, he was not bound to pay, until the persons claiming to be next of kin, and entitled to a distributive share, had established their rights before the Orphans' Court, and obtained a decree, settling the amount due to each of them respectively. *Rev. Laws,* 177, *Section* 12. Judge Griffith in his *Law Register*, 4 *vol.* 1192 *n.* 2. *and id.* 1254 *in note,* admits, that in point of fact, the Orphans' Court seldom make any order or decree for distribution, determining to whom, and in what proportions, the surplus is to be paid ; and he remarks, the practice has been for the administrator to take it upon himself to ascertain who are the persons entitled, and their proportions, and then to pay them off, or settle with them as well as he could : and he adds, that sometimes the next of kin sue the administration bond, or bring an action of assumpsit against the administrator, founded on the statute of distributions, setting forth the amount of the surplus, the title of the plaintiff, and averring the sum due to him, as one of the persons entitled to a distributive share. And although the learned author of the Register, says in one place, 4 *vol.* 1192 *in n.* "it may possibly become a question, whether the bond can be sued, or made effectual against the administrator, *until* the Orphans' Court has ordered distribution, and determined what the party is entitled to, as one of the distributees ; " yet he clearly expresses his own opinion, *id.* 1255, that no suit, on the bond, or otherwise, at law, can be maintained against the administrator, until *distribution* has been decreed, and each one's particular share *ascertained* and *settled,* by a decree of the Orphans' Court, or by the Ordinary, on an appeal from such decree.

It is singular, that this should be a question at this day, and yet I cannot learn that it has been settled by any judicial decision. If it has not, we must now settle it upon sound and legal principles. By the 12th *Section* of the act, concerning executors, *Rev. Laws,* 174, it is enacted, that the Orphans' Court, after the administrator has legally accounted, " *shall*

The Ordinary *v.* Executors of Smith.

*order* a just and equal distribution of what shall remain, among the wife and children, or children's children, if any such there be, or otherwise to the next of kindred to the intestate, in equal degree, or legally representing their stock, each according to his or her respective right, pursuant to the laws in such cases ; and the same distribution to *decree and settle ;* " and the statute then gives to the persons entitled to *such* distribution, their remedy at law for the recovery thereof against the administrator, saving however to every one, the right of appeal. It is clear that the next of kin, could not maintain assumpsit, or any other action at law against the executor or administrator, if such remedy had not been given by statute; and it seems to me equally certain, that a person bringing such action, must be able to show, that the Orphans' Court has *decreed and settled* the distribution, and in doing so, has *decreed* to him, a certain distributive share. Nor in my opinion can a person claiming as next of kin, assign as a breach of the administration bond, non-payment of a distributive share, any more than he can bring his own action at law, for the recovery thereof, until such distribution has been settled and decreed by the Orphans' Court. In England, the course undoubtedly is, for the Ordinary to settle and decree the amount due to each of the next of kin, and then, if necessary, to compel payment, by putting the bond in suit. 4 *Law Register*, 1192, *n.* 2. In this State, though the bond is given to the Ordinary, and when suit is brought, and a recovery had upon it, the money is to be paid into the Prerogative Court, and to be applied in such manner as that court shall by sentence or decree direct ; yet the Ordinary has not the settlement of accounts, nor the decreeing of distribution, in the first instance. He has only an appellate jurisdiction in those matters; *Rev. Laws*, 177, 8, *Sections* 11 and 12. But a previous and specific decree for distribution, is as necessary and proper, under our system, as it is in England. The only ground upon which a different practice can be contended for, is founded on a slight variance between the condition of the administration bond required by our statute, and the one used in England. The condition of the bond required by the 22 and 23 *Car.* 2 *c.* 10, is, " that the administrator shall deliver

The Ordinary *v.* Executors of Smith.

and pay unto *such person or persons* respectively, as the said judge" (that is the Ordinary,) "by his sentence or decree, shall limit and appoint." Whereas the condition of our bond, is, that the administrator shall pay " to *such persons as by law* shall be entitled," &c. Hence it is supposed, the administrator with us, is referred at once, to the persons lawfully entitled under the statute of distributions ; and that he must seek them out at his peril, and pay them their respective shares, upon his own responsibility. But there is no foundation for this distinction. The reason and good sense of the thing, is the same under our statute as it is under that of the 22 and 23 *Car.* 2. Who are the next of kin—within what degree are they related, and what proportions are they entitled to, are matters of judicial inquiry and determination ; sometimes disputed and difficult to be ascertained : and the administrator having faithfully administered on the estate, and settled his accounts in the Orphans' Court, may fold his arms in security, until the persons claiming to be next of kin, have obtained a decree of the proper tribunal, establishing their title, ascertaining the amount due to them respectively ; and shall tender to him a refunding bond for the sum " allotted" to them respectively. The 17th *Section* of the statute, *Rev. Laws*, 179, evidently contemplates such allotment, or specific appropriation of the surplus funds. It does not say, the person entitled shall give bond, &c. Its language is " that the person. to whom any distributive share *shall be allotted*, shall give bond," &c.

The prosecutor in this case, seems to have considered such previous decree, necessary, for he took care to obtain one before he instituted this suit. It was too late, however, to lay the foundation of an action on the bond, for *non-payment by* the administrator. If such decree was necessary, it ought to have been obtained in the administrator's lifetime. The securities are not bound to pay to the distributees : they do not stand in the shoes of the administrators, and are not to complete the administration. They are responsible only in case their principal in his lifetime, has committed a breach of the bond. If the Ordinary had no right of action on the bond, against the administrator in his lifetime, he can have none against his securities now.—

The Ordinary *v.* Executors of Smith.

What then, it may be asked, is to be done, if the administrator happens to die, *after* he has settled his account, and *before* a regular decree for distribution is made ?    Are the next of kin in such case, without remedy ?

These, and other questions may be asked, in anticipation of events that may happen, to some of which it may not be easy to give very satisfactory answers.   " Much remains," as Judge Griffith remarks, 4 *Law Register*, 1193, *in n.* " to be regulated on this important subject." But the difficulty just suggested, is capable of an easy solution.   Suppose an administrator while faithfully executing his trust, and before he has committed any breach of his bond, should die ; what is to be done ?   Why every one knows, that in such case, administration *de bonis non* must be taken out.   If then, he lives to settle his account, and should suddenly be cut off by death, before he could ascertain the next of kin, or the court could decree distribution, or if you please, while he was in the act of paying over the surplus, would that work a forfeiture of his bond, and subject his securities to the penalty ?   It will not be pretended.   Another administrator must be appointed to complete the administration.   So in this case : Instead of proceeding on the bond against the securities of the deceased administrator, letters of administration *de bonis non*, should have been taken out upon the estate of Hill ; such administrator would have been entitled to call on the personal representatives of Wright the first administrator, for these funds. If they had been received by the administrator *de bonis non*, distribution might then have been decreed, and the money paid over by him to the next of kin.   If the estate of Wright, the first administrator, proved to be insolvent, it would have shown a *devastavit* by him, and so a breach of his bond, *The People* v. *Dunlap*, 13 *Johns. R.* 437, for which, an action might have been brought by the Ordinary against these defendants, for the benefit of the administrator *de bonis non*.   If the funds came into the hands of the representatives of the first administrator, and were misapplied or wasted by them, there might be more difficulty.   Should such representatives of the first administrator, be themselves administrators, the remedy would be on their administration bond ; but if they should be executors, then it is

The Ordinary *v.* Executors of Smith.

true, the administrator *de bonis non* would have nothing to rely on, but his own dilligence and their integrity. Be all this however as it may, I am clearly of opinion, the present action cannot be maintained, *unless*, as has been contended, it was the duty of the administrator himself to apply to the Orphans' Court, and obtain a decree for distribution. But I cannot find it in the bond; it is no part of the condition that he should do so: and it will not do to extend the liability of securities, by slight implications. There is no doubt but the administrator may, as in practice is generally done, undertake to find out, upon his own responsibility, who are entitled to distributive shares; the amount due to them respectively, and settle with them accordingly.— This he will generally do, when he knows the parties in interest; but sometimes he does not know who they are; and if he does, disputes may exist among them, as to the existence or extent of their respective claims on the fund. By what process, I would ask, is he to ascertain and settle these matters? Or is his liability, and that of his securities, to depend upon the fact, whether he knew, or did not know, who were the next of kin, and the portions to which they were respectively entitled? It may sometimes happen, where the next of kin are in foreign countries, or are minors, that the funds may remain for a time undistributed; but this cannot frequently occur; and if it were otherwise, it would not alter the law. In my opinion, judgment must be given for the defendants.

RYERSON, J. concurred.

FORD, J. dissented.

*Judgment for defendants.*

CITED in *Exton* v. *Zule*, 1 *McCarter* 505; *Frey* v. *Demarest*, 1 *C. E. Gr.* 238; *Estate of Eaken Re.* 5 *C. E. Gr.* 483; *Bockover* v. *Ayers*, 7 *C. E. Gr.* 16; *Ordinary* v *Barcalow*, 7 *Vr.* 20.